**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **DEBORAH DAUGHETEE** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 09-4100-MWB** |
| | ) | |
| **v.** | ) | **PLAINTIFF'S MEMORANDUM IN** |
| | ) | **SUPPORT OF MOTION FOR** |
| | ) | **SANCTIONS AGAINST** |
| | ) | **FIRMENICH, INC.** |
| **CHR. HANSEN, INC. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

COMES NOW PLAINTIFF and states the following in support of her motion to sanctions against Defendant Firmenich Incorporated.

On April 11, 2012, this Court heard argument on Plaintiff's Motion to Compel as Against Firmenich, Inc. On that date, the Court entered its Order (Doc. 202) ordering Firmenich to provide new responses to discovery on or before April 25, 2012. The Court further granted an additional four business days to May 1, 2012 for Plaintiff to supplement experts. On April 26, Plaintiff received new responses to interrogatories and a disc containing 26 additional documents. **Ex. 1 and Ex. 2.** The interrogatories are completely deficient. Plaintiffs suggest that an order of sanctions is appropriate at this time.

From a review of Firmenich's amended interrogatory answers and supplemental documents, it appears that a game is being played. The court specifically directed that substantive answers be given including narrative answers. Instead, Firmenich has again referred Plaintiff to documents and to another pleading. Why in the world can't Firmenich just give a straight answer? Simple; it is

attempting to prevent Plaintiff from having a usable answer to read to a jury.  By way of example, Plaintiff refers the Court to the following answers:

INTERROGATORY 1.  This asked Firmenich to describe the product sold to General Mills. It asks for basic information such as is the product a liquid or a paste or a powder.  This is a very simple question.  Instead of answering, Firmenich directed Plaintiffs to 39 citations for documents containing approximately 1,695 pages.  No specific narrative answer was given. This is in no way a clear response.

INTERROGATORY 3.  This asks Firmenich to identify material safety data sheets, labels, warnings or any health related information provided by Firmenich along with the dates and to identify the persons who prepared the documents. No specific answer was given. Citation was given to some documents and it referred to its initial disclosures. Plaintiff cannot discern the answer to this question in any meaningful way. What was on the labels?  What health information was provided?

INTERROGATORY 4.  This asks Firmenich to identify its sales of butter flavor to General Mills.  Firmenich did give an itemization of these sales.  It is not understood why Firmenich could not give the same type of specific answer to other interrogatories.  However, this interrogatory did ask Firmenich to state the diacetyl content in the flavors and to describe the warnings given to General Mills.  Plaintiff does not believe or assume that material safety data sheets were sent with each shipment of flavors so it is now known when Firmenich made any warning, meaning that the dates on documents are not necessarily the dates that any warnings were given.  This is an important question because Plaintiff submits that no real warning was given: this is why Firmenich does not want to state the warning in writing in these interrogatories.  This should be specifically answered.

2

INTERROGATORY 5.  This asks Firmenich to identify its diacetyl suppliers.  Again, the answer is deficient.  It identified Polarome and BASF as suppliers but did not state when the purchases were made so that Plaintiff would know when Firmenich received warnings from those suppliers.  Firmenich produced material safety data sheets from BASF dated earlier than the dates Firmenich claims to have purchased from BASF.  How did it receive those warnings?  Can Plaintiff assume that a warning was given on the date the document was prepared?  It is unlikely Firmenich will agree to that assumption at trial.  Further, Firmenich produced new material safety data sheets from another diacetyl supplier, Advanced Biotech.  **Ex. 3.**  Did Firmenich also purchase from this company?

INTERROGATORY 6.  This asks Firmenich to describe the respiratory health hazards of each ingredient contained in the butter flavoring.  This was not answered.  Instead, Firmenich gives a narrative that is vague and self serving. First, it limits the answer to diacetyl when the interrogatory asks about each ingredient in the product.  Regarding diacetyl, it states that there could be some form of hazard when exposed to "high concentrations" or when there is no "adequate ventilation".  What does this even mean? At what "high" concentration?   What does Firmenich maintain is "adequate ventilation?"  The answer states that an existence of a hazard depends on multiple factors including "concentration, duration, and frequency of a person's exposure, the surrounding ventilation, an individual's predisposition. " What does this mean?  The answer is so vague as to be unintelligible. If this was the way that Firmenich gave a warning to General Mills, it is no wonder that General Mills did not know how to respond to a Firmenich MSDS.

INTERROGATORY 7.  This asks if Firmenich has conducted or is aware of any tests, investigations or research into the hazards of butter flavor or diacetyl. No answer was given to this

3

specific interrogatory.  With regard to tests of which it is aware, Firmenich did not answer but cited some produced documents.  However, in the accompanying production Firmenich produced a document Bates stamped FIRM-DHT-0010612 which was a report written to Quest.  The first sentence states:

> On 19 March 2004 we have submitted to you our Draft Statement 'Preliminary risk assessment concerning the inhalation of diacetyl 2,3 butanedione used in flavourings for the food industry'.

**Ex. 4.**  This is clearly information given to Firmenich as a part of some research or investigation about diacetyl, yet Firmenich does not give any description of this or any investigation it conducted.  Firmenich does not even identify this documents in the response to Interrogatory 7.

Firmenich produced material safety data sheets from a diacetyl supplier, Advanced Biotech, which Firmenich states did not actually sell it diacetyl. Ex. 3.  Why did Firmenich have these warning sheets?

Firmenich made a catch-all statement in its answer that the trade association, FEMA, may have also made studies.  Yet, Firmenich identifies no such studies.  FEMA made available studies to its members specifically so that its members would have hazard information to use in formulating products and giving warnings.  Firmenich clearly had access to that information but has determined to identify none of it.  But it goes further and states that Plaintiff should already have this unidentified information.  This is no answer at all and is simply an out for Firmenich to maneuver at trial.

INTERROGATORY 8.  This asks if Firmenich attended any meetings, seminars, conferences, workshops discussing the risks of diacetyl or butter flavoring since 1991.  Firmenich says it did attend meetings but identifies none.  Then it "further responds" and identifies four meetings in 2009 and 2010.  These are not the first meetings attended by Firmenich.  Why did it

identify these 2009 and 2010 meetings but no others?  Further, it refused to produce materials from these 2009-2010 meetings claiming Plaintiff already has the materials?  This is, again, no answer.

INTERROGATORY 9.  This asks if protective gear has been provided to Firmenich employees. No answer was given but Bates stamp citations were given to 70 documents.  This is not a complicated question.  It is not difficult to state that in 1991 (to pick a year) Firmenich provided employees with respirators for use around diacetyl.  Firmenich should not be allowed to avoid straight answers by the bobbing and weaving it is performing in this discovery process.  It should not be difficult to simply describe protective gear and when it was given to employees.

INTERROGATORY 10.  This asks if changes were made at the Firmenich plant to reduce employee exposures to diacetyl. No answer was given but Bates stamp citations were given to 71 documents.  It was able to give a generic answer that changes were made due to increasing knowledge about the hazards of diacetyl and to point to 71 documents but not able to actually describe those changes in a writing that could be read to a jury.  This is likely because it was making changes to protect employees at a time when it made no similar warning to its customers.  Firmenich now seeks to avoid stating this in a way that could harm it at trial.

INTERROGATORY 11.  This asks if any workers compensation claims have been filed. Its response was simply the avoidance of an answers.  Two persons were named, but not Raza Ahmad. Mr. Ahmad was specifically found to have lung disease similar to that found in microwave popcorn plants - and at a time when Firmenich was selling product to General Mills.  Yet it does not name Mr. Ahmad.  Instead a reference was made to produced documents. This is clearly misleading.

INTERROGATORY 12.  This asks if pulmonary function testing has been provided and why. No answer was given but instead produced documents were referenced. This does not answer the question nor does it answer why the tests were given.  Clearly, tests were given to determine if

Firmenich had the same problem as did the Jasper plant. Mr. Ahmad is proof of the existence of the disease in Firmenich's own plant.  Plaintiff is aware that Firmenich met with Dr. Cecile Rose, M.D. of National Jewish Health Center about an investigation at Firmenich, but Firmenich did not end up hiring Dr. Rose.  It did retain a health group in Princeton, New Jersey for breathing tests, but Firmenich does not identify reports given to the company or give any specific answer.

INTERROGATORY 13.  This asks about communications with ConAgra, General Mills and American Pop Corn. No answer was given.

INTERROGATORY 15.  This asks if NIOSH has conducted a study of the Firmenich plant and to give detailed information about the study. Other than stating that NIOSH has been to the plant, no answer was given.

Firmenich produced a few additional documents, some of which were redacted. FIRM-DHT-0010565 and FIRM-DHT-10568, which are attached as **Ex. 5 and 6,** were redacted.  There does not appear to be any reason why they were redacted, particularly since there is a protective order in place.  These should be produced with no redactions.

Very little in additional documentation has been produced since the Court's order.  This is gamesmanship at an extreme; made worse since it is done in response to a court order.  Plaintiff does not have the time to wait longer for Firmenich to give straight answers.  Plaintiff would suggest that at this point sanctions are in order.  An issues sanction prohibiting Firmenich from contesting or introducing evidence on the topics of these interrogatories is an appropriate sanction.

Respectfully Submitted,

HUMPHREY, FARRINGTON  & McCLAIN, P.C.


_____/s/ J'Nan Kimak_____
KENNETH B. McCLAIN                          # 32430
STEVEN E. CRICK                                # 32654
J'NAN C. KIMAK                                   # 56596
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX
       and
SMITH AND McELWAIN LAW FIRM
DENNIS M. McELWAIN
505 - 5th Street, Suite 530
P.O. Box 1194
Sioux City, Iowa  51102
(712) 255-8094
**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system.  Parties may access this filing through the Court's system.

Dated this 3rd day of May, 2012.


_____/s/ J'Nan Kimak_____
ATTORNEYS FOR PLAINTIFFS